IN THE CIRCUIT COURT OF THE
FOURTH JUDICIAL CIRCUIT IN AND
FOR DUVAL COUNTY, FLORIDA

LAWRENCE ARDOLINO and
DOROTHY ARDOLINO,

Plaintiffs,

vs.

PFIZER, INC., PHARMACIA CORP.,
MONSANTO COMPANY. and
G.D. SEARLE, LLC

Defendants.

CASE NO.:
DIVISION:

DIVISION CV-H



## COMPLAINT

**COME NOW** the Plaintiffs, Lawrence Ardolino and Dorothy Ardolino, and by way of this Complaint seek relief against the Defendants, Pfizer, Inc., Pharmacia Corp., Monsanto Company. and G.D. Searle, LLC., and state as follows upon information and belief:

### I. PARTIES

1. Plaintiff Lawrence Ardolino (hereinafter "Mr. Ardolino") is an adult male living at 12347 Deeder Lane, Jacksonville, Florida 32258.

2. Plaintiff Dorothy Ardolino (hereinafter "Mrs. Ardolino") is an adult female living at 12347 Deeder Lane, Jacksonville, Florida 32258.

3. Defendant Pharmacia Corp. ("Pharmacia") is a Delaware corporation with its principle place of business in New York. At all times relevant hereto, Pharmacia has been engaged in the business of designing, testing, manufacturing, labeling, advertising, promoting, marketing, selling, and/or distributing Celebrex, directly or indirectly, to persons throughout the State of Florida, including Duval County, Florida, and its actions have affected commerce within

Duval County, Florida and elsewhere in Florida.

4. Defendant Mansanto Company ("Mansanto") is a Delaware corporation with its principal place of business in Missouri. At all times relevant hereto, Mansanto has been engaged in the business of designing, testing, manufacturing, labeling, advertising, promoting, marketing, selling, and/or distributing Celebrex, directly or indirectly, to persons throughout the State of Florida, including Duval County, Florida, and its actions have affected commerce within Duval County, Florida and elsewhere in Florida.

5. Defendant G.D. Searle, LLC ("Searle") is a Delaware corporation with its principal place of business in Illinois. At all times relevant hereto, Searle has been engaged in the business of designing, testing, manufacturing, labeling, advertising, promoting, marketing, selling, and/or distributing Celebrex, directly or indirectly, to persons throughout the State of Florida, including Duval County, Florida, and its actions have affected commerce within Duval County, Florida and elsewhere in Florida.

6. Defendant Pfizer, Inc. ("Pfizer") is a Delaware corporation with its principal place of business in New York. At all times relevant hereto engaged in the business of designing, testing, manufacturing, labeling, advertising, promoting, marketing, selling, and/or distributing Celebrex, directly or indirectly, to persons throughout the State of Florida, including Duval County, Florida, and its actions have affected commerce within Duval County, Florida and elsewhere in Florida.

## II. JURISDICTION

7. This is an action for damages which exceeds the sum of $15, 000.00, exclusive of interest, attorneys' fees and costs.

8. This action is filed in a timely manner pursuant to Fla. Stat. §§ 95.031 and 95.11(3).

9. This Court has personal jurisdiction over the parties and also jurisdiction over the subject matter herein for the reasons stated in this Complaint.

10. The claims herein are brought solely under state, common and statutory law and do not arise out of federal law. Plaintiffs seek no relief under any federal laws or regulations and assert no federal claims.

11. Venue is proper as relevant events occurred within Duval County, Florida, and for the reasons stated herein.

### III. FACTUAL BACKGROUND

#### A. Celebrex

12. Defendants introduced Celebrex, also known as celecoxib, a selective non-steroidal anti-inflammatory drug ("NSAID") that is further categorized as a COX-2 inhibitor prescription drug to the marketplace in or around February 1999.

13. Defendants designed, marketed, promoted, manufactured, distributed and sold Celebrex as a safe and effective drug primarily designed to treat rheumatoid arthritis and osteoarthritis.

14. Defendants designed, marketed, promoted, manufactured, distributed and sold Celebrex as a prescription drug in capsule form to be taken at doses ranging from 100 mg to 800 mg daily.

15. Prior to launching Celebrex in February 1999, Defendants failed to conduct any significant studies testing the affects of Celebrex on the cardiovascular system.

16. Defendants proceeded with an aggressive marketing, promotion, manufacturing and distribution campaign despite initial disturbing signs that COX-2 inhibitors such as Celebrex could have an adverse effect favoring vasoconstriction, platelet aggregation and thrombosis.

17. Studies and research conducted in the scientific community since the introduction of Celebrex to the marketplace reveal that Celebrex is indeed associated with an increased risk of serious adverse cardiovascular events.

18. One study conducted by Defendants from approximately July 1997 until approximately June 1999 titled, "A Double-Blind, Randomized, Placebo-Controlled, Comparative Study of Celecoxib (SC-58635) for the Inhibition of Progression of Alzheimer's Disease" (hereinafter "Alzheimer's Study"), showed a statistically significant increase of serious adverse cardiovascular events occurring in individuals using Celebrex compared to the placebo.

19. Despite having knowledge of such significant findings, Defendants failed to reveal the Alzheimer's Study and its findings to the Food and Drug Administration ("FDA") until January 2005, placing consumers and the general public at considerable and unnecessary risk.

20. Not only did Defendants fail to notify the FDA of the Alzheimer's Study initially, but they failed to initiate further internal studies or testing to determine cardiovascular dangers associated with the use of Celebrex.

21. Defendants further failed to initiate design and manufacturing changes to correct or mitigate potential serious adverse cardiovascular events experienced by consumers.

22. Defendants further failed to notify or warn unsuspecting consumers and physicians of the hidden cardiovascular dangers associated with the use of Celebrex prior to

December 2004.

23.     In December 2004 Defendants released a statement regarding findings of increased risks of serious cardiovascular events associated with the use of Celebrex following a cancer study analyzing the efficacy of Celebrex in cancer patients.

24.     Prior to December 2004, Defendants designed, marketed, promoted, manufactured, distributed and sold Celebrex as a safe and effective drug with no mention of any potential risk of a consumer experiencing an adverse cardiovascular event.

25.     Not until April 2005, at the direction and mandate of the FDA, did Defendants begin placing warnings on the Celebrex label and package insert indicating that Celebrex has been associated with an increased risk of serious adverse cardiovascular events.

26.     Prior to December 2004, Defendants engaged in an aggressive and misleading marketing and promotion campaign of Celebrex minimizing or not disclosing known safety risks, side effects and adverse events.

27.     Defendants' marketing and promotion campaign included targeting individual consumers who play golf by maintaining yearly sponsorships and advertising partnerships with the PGA Tour and the Champions Tour.

28.     Defendants' golf advertising campaign was intended to market the safety and efficacy of Celebrex to individual consumers who play golf.

29.     Defendants further engaged in other television and print advertising of Celebrex prior to December 2004 which failed to disclose any increased risk of serious adverse cardiovascular events associated with the use of Celebrex.

30.     Defendants' advertising and marketing to both physicians and individual

consumers prior to December 2004 failed to disclose any increased risk of serious adverse cardiovascular events associated with the use of Celebrex.

**B.     The Ardolinos**

31.     Mr. Ardolino was prescribed Celebrex by his primary physician, Ronald G. Thomas, M.D. in November 2001 to treat general arthritic pain Mr. Ardolino was experiencing.

32.     Much of the arthritic pain Mr. Ardolino experienced limited him from fully enjoying one of his favorite hobbies; playing golf.

33.     Mr. Ardolino relied upon the marketing representations made by Celebrex which used golf advertisements to convey that Celebrex was safe and effective. These representations further convinced Mr. Ardolino that Celebrex was in fact safe and effective and that he should purchase and use Celebrex.

34.     Mr. Ardolino's regimen and intake of Celebrex consisted of a daily dose of 200 mg of Celebrex. This daily dose was taken by Mr. Ardolino from approximately November 2001 to approximately January 2005.

35.     Prior to being prescribed and taking Celebrex, Mr. Ardolino was not diagnosed with any significant cardiac conditions or diseases.

36.     Prior to December 2002, Mr. Ardolino was a healthy, active 55 year old man who worked as a warehouse operator for Nissan Motors.

37.     Prior to December 2002, Mr. Ardolino did not smoke, drink excessively or maintain an unhealthy diet.

38.     On or about December 2, 2002, Mr. Ardolino suffered a serious cardiac event which cardiologists at St. Luke's Hospital in Jacksonville, Florida diagnosed as a syncope

secondary to severe sinus node dysfunction with a five second pause.

39. Mr. Ardolino suffered this serious cardiac event while working at Nissan Motors. Mr. Ardolino suddenly became dizzy and fell to the ground hitting the back of his head on the hard floor surface. He was immediately rushed to St. Luke's Hospital where he was treated and underwent a series of tests.

40. Upon being evaluated and treated, cardiologists recommended that Mr. Ardolino undergo surgery to implant a pacemaker device within his heart.

41. Consequently, Mr. Ardolino underwent surgery to implant a pacemaker device based upon the recommendations and advice of his treating physicians.

42. The serious adverse cardiovascular event suffered by Mr. Ardolino is included within the same type of cardiovascular events for which Celebrex has been associated.

43. Since the serious cardiac episode in December 2002, Mr. Ardolino has suffered significant physical and mental anguish.

44. The serious cardiac event required Mr. Ardolino to significantly limit his physical activities and felt that he was forced into early retirement at Nissan Motors due to this new heart condition.

45. Since the serious cardiac event, Mr. Ardolino experienced and continues to experience dizziness, loss of energy, and fear of his heart condition which all contribute to a diminished quality of life and cause additional mental anguish about the status of his current and future health.

46. Since the serious cardiac event, Mrs. Ardolino has also suffered from the couple's lack of intimacy and inability to enjoy the same active lifestyle she enjoyed with her husband

prior to December 2002.

47. Both Mr. Ardolino and Mrs. Ardolino have suffered emotional anguish from the decreased activity and fear that Mr. Ardolino's daily life encompasses since being faced with the serious cardiac event and its lingering repercussions.

48. As a result of using Celebrex, Mr. Ardolino has been treated by medical professionals throughout the Jacksonville area.

## IV. FRAUDULENT CONCEALMENT

49. Plaintiffs reallege and incorporate by reference all those allegations contained in the preceding paragraphs of this Complaint.

50. Plaintiffs had no notice that Celebrex was associated with an increased risk of serious adverse cardiovascular events until April 2005 when the FDA issued an alert and mandated that Defendants include such a warning on its product label and package insert.

51. Defendants misrepresented and actively concealed material facts from Plaintiffs by:

    a. failing to disclose the adverse cardiovascular effects of Celebrex to Plaintiffs, the medical community, the pharmaceutical community, the scientific community, regulators and the public;

    b. failing to warn of Plaintiffs, the medical community, the pharmaceutical community, the scientific community, regulators and the public of the adverse cardiovascular effects of Celebrex; and,

    c. concealing studies showing increased risk of adverse cardiovascular events associated with Celebrex from Plaintiffs, the medical community, the

-8-

pharmaceutical community, the scientific community, regulators and the public.

52. Plaintiffs reasonably relied upon the said misrepresentations and willful nondisclosures by Defendants. Based upon said misrepresentations and willful nondisclosures, a reasonable person would have been unaware of the existence of a cause of action against Defendants until April 2005, when the FDA first issued an alert and mandated to Defendants to include a warning that Celebrex was associated with an increased risk of serious adverse cardiovascular events.

53. As a result of Defendants' fraudulent concealment, Plaintiffs could not reasonably have discovered Defendants' misconduct regarding Celebrex prior to April 2005. Thus, Plaintiffs assert the tolling of any applicable statute of limitations affecting the rights of action of Plaintiffs.

## V. CLAIMS FOR RELIEF

### COUNT I
### (STRICT PRODUCTS LIABILITY- DESIGN DEFECT)

54. Plaintiffs reallege and incorporate by reference all those allegations contained in the preceding paragraphs of this Complaint.

55. Defendants designed, manufactured, distributed or sold Celebrex knowing that it was to be used without inspection for defects.

56. Celebrex was defective and unreasonably dangerous at the time it left Defendant's possession and control.

57. Celebrex as designed, posed an increased risk of the user experiencing a serious

adverse cardiovascular event, which resulted in a defective condition that was unreasonably dangerous to Mr. Ardolino as a consumer or user of the defectively designed product.

58. At all times, Mr. Ardolino used Celebrex for its intended and reasonably foreseeable purpose.

59. Celebrex reached Mr. Ardolino without any substantial change in its original condition.

60. The use of Celebrex by Mr. Ardolino due to a defect in its design which posed an increased risk of the user experiencing a serious adverse cardiovascular event such as that experienced by Mr. Ardolino, was the direct and proximate cause of Mr. Ardolino's pain, suffering and injury.

61. As a direct and proximate result of said acts and omissions of Defendants, Mr. Ardolino has suffered and continues to suffer damages including lost wages, benefits and entitlement, lost front pay and lost future earnings, medical expenses, past, present and future physical pain and suffering, past, present and future mental and emotional pain and suffering, distress, humiliation, loss of dignity, and loss of enjoyment of life.

62. The acts and omissions of Defendants constitute intentional misconduct or gross negligence as defined pursuant to Florida Statute § 768.72.

## COUNT II
### (STRICT PRODUCTS LIABILITY- FAILURE TO WARN )

63. Plaintiffs reallege and incorporate by reference all those allegations contained in the preceding paragraphs of this Complaint.

64. Defendants designed, manufactured, distributed or sold Celebrex knowing that it

was to be used without inspection for defects.

65. Defendants designed, manufactured, distributed or sold Celebrex which did not contain adequate warnings of the risks associated with the use of Celebrex.

66. Defendants failed to adequately warn of the risks of serious adverse cardiovascular events associated with the use of Celebrex.

67. The risks of a serious adverse cardiovascular event and injury associated with the use of Celebrex was known or knowable in light of the generally recognized and best prevailing scientific and medical knowledge at the time of the manufacture, sale and distribution of Celebrex.

68. The failure of Defendants to adequately warn of the risks of serious adverse cardiovascular events and injury rendered Celebrex defective and unreasonably dangerous.

69. Defendants' failure to adequately warn Mr. Ardolino and Mr. Ardolino's physicians of the risks of a serious adverse cardiovascular event and injury associated with the use of Celebrex rendered Celebrex defective and was the direct and proximate cause of Mr. Ardolino's pain, suffering and injury.

70. As a direct and proximate result of said acts and omissions of Defendants, Mr. Ardolino has suffered and continues to suffer damages including lost wages, benefits and entitlement, lost front pay and lost future earnings, medical expenses, past, present and future physical pain and suffering, past, present and future mental and emotional pain and suffering, distress, humiliation, loss of dignity, and loss of enjoyment of life.

71. The acts and omissions of Defendants constitute intentional misconduct or gross negligence as defined pursuant to Florida Statute § 768.72.

## COUNT III
### (NEGLIGENCE- DESIGN DEFECT)

72. Plaintiffs reallege and incorporate by reference all those allegations contained in the preceding paragraphs of this Complaint.

73. Defendants knew, or in the exercise of ordinary care should have known, that due to Celebrex creating a risk of serious adverse cardiovascular events, that Defendants designed, marketed, distributed or sold an unreasonably dangerous product to consumers like Mr. Ardolino.

74. Defendants had a duty to design Celebrex in a reasonably safe manner to protect unsuspecting consumers like Mr. Ardolino and unsuspecting physicians, from being subjected to the defective nature of the intended use of Celebrex.

75. Defendants breached their duty to design a reasonably safe product in Celebrex when they created a risk of the user suffering a serious adverse cardiovascular event.

76. Defendants' breach of their duty to design a reasonably safe product was the direct and proximate cause of Mr. Ardolino's pain, suffering and injury.

77. Mr. Ardolino's injury was a direct and proximate result of the breach of Defendants' duty to design a reasonably safe product free from the user of Celebrex suffering a serious adverse cardiovascular event, such as that experienced by Mr. Ardolino.

78. As a direct and proximate result of said acts and omissions of Defendants, Mr. Ardolino has suffered and continues to suffer damages including lost wages, benefits and entitlement, lost front pay and lost future earnings, medical expenses, past, present and future physical pain and suffering, past, present and future mental and emotional pain and suffering, distress, humiliation, loss of dignity, and loss of enjoyment of life.

79. The acts and omissions of Defendants constitute intentional misconduct or gross negligence as defined pursuant to Florida Statute § 768.72.

## COUNT IV
### (NEGLIGENCE- FAILURE TO WARN)

80. Plaintiffs reallege and incorporate by reference all those allegations contained in the preceding paragraphs of this Complaint.

81. Defendants knew, or in the exercise of ordinary care should have known, that due to Celebrex creating a risk of serious adverse cardiovascular events, that Defendants created an unreasonably dangerous product to consumers like Mr. Ardolino.

82. Defendants had a duty to warn users, including Mr. Ardolino, and their prescribing physicians, of the risks of serious adverse cardiovascular events and injury, including permanent injury, associated with the use of Celebrex.

83. Defendants breached their duty to warn of the risks of a serious adverse cardiovascular event and injury, including permanent injury, associated with the use of Celebrex.

84. Defendants' breach of their duty to warn users, including Mr. Ardolino, and their prescribing physicians of the risks of a serious adverse cardiovascular events and injury, associated with the use of Celebrex was the direct and proximate cause of Mr. Ardolino's injury.

85. As a direct and proximate result of said acts and omissions of Defendants, Mr. Ardolino has suffered and continues to suffer damages including lost wages, benefits and entitlement, lost front pay and lost future earnings, medical expenses, past, present and future physical pain and suffering, past, present and future mental and emotional pain and suffering, distress, humiliation, loss of dignity, and loss of enjoyment of life.

86. The acts and omissions of Defendants constitute intentional misconduct or gross negligence as defined pursuant to Florida Statute § 768.72.

## COUNT V
### (BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY- FLA. STAT. § 672.314)

87. Plaintiffs reallege and incorporate by reference all those allegations contained in the preceding paragraphs of this Complaint.

88. Defendants are merchants and are in the business of selling pharmaceutical drugs such as Celebrex.

89. Defendants marketed, promoted, distributed or sold Celebrex to Mr. Ardolino and his physicians as a product of merchantable quality.

90. Celebrex was defective when Mr. Ardolino, a foreseeable consumer and user of Celebrex purchased and used the product.

91. Defendants' product, Celebrex, was being used by Mr. Ardolino for its ordinary, reasonably foreseeable and intended purposes as it was prescribed to him by his physicians.

92. Defendants' product, Celebrex, was not merchantable or reasonably fit for its ordinary, reasonably foreseeable and intended purposes at the time of sale because it causes increased risks of serious adverse cardiovascular events.

93. As a direct and proximate result of Defendants' failure to provide Mr. Ardolino a merchantable product, Mr. Ardolino suffered and continues to suffer damages including expenses for payment of Celebrex, lost wages, benefits and entitlement, lost front pay and lost future earnings, medical expenses, past, present and future physical pain and suffering, past, present and

future mental and emotional pain and suffering, distress, humiliation, loss of dignity, and loss of enjoyment of life.

94.     The acts and omissions of Defendants constitute intentional misconduct or gross negligence as defined pursuant to Florida Statute § 768.72.

## COUNT VI
### (BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE- FLA. STAT. § 672.315)

95.     Plaintiffs reallege and incorporate by reference all those allegations contained in the preceding paragraphs of this Complaint.

96.     Defendants marketed, promoted, distributed or sold Celebrex to Mr. Ardolino and his physicians as a product fit for a particular purpose: a safe and effective medication to alleviate pain associated with arthritis.

97.     Defendants knew or had reason to know that Celebrex would be used by consumers such as Mr. Ardolino, but that Celebrex was not suitable or fit for the purposes as marketed, promoted, distributed or sold.

98.     Mr. Ardolino and his physicians relied upon Defendants' skill and judgment in selecting and furnishing a suitable product, Celebrex, for the intended purpose.

99.     Celebrex was defective when Mr. Ardolino, a reasonably foreseeable consumer and user of Celebrex purchased and used the product.

100.    Defendants' product, Celebrex, was being used by Mr. Ardolino for the intended purpose that it relieve Mr. Ardolino's pain associated with arthritis in a safe and effective manner.

101.    Defendants' product, Celebrex, was not reasonably fit for its intended purpose at

the time of sale because it causes increased risks of serious adverse cardiovascular events.

102. As a direct and proximate result of Defendants' failure to provide Mr. Ardolino a product fit for its intended purpose, Mr. Ardolino suffered and continues to suffer damages including expenses for payment of Celebrex, lost wages, benefits and entitlement, lost front pay and lost future earnings, medical expenses, past, present and future physical pain and suffering, past, present and future mental and emotional pain and suffering, distress, humiliation, loss of dignity, and loss of enjoyment of life.

103. The acts and omissions of Defendants constitute intentional misconduct or gross negligence as defined pursuant to Florida Statute § 768.72.

## COUNT VII
### (CONSUMER PROTECTION VIOLATION-FLA. STAT. § 501.201 *et seq.*)

104. Plaintiffs reallege and incorporate by reference all those allegations contained in the preceding paragraphs of this Complaint.

105. Defendants had a statutory duty to refrain from unfair or deceptive acts or practices in the marketing, promotion, distribution or sale of Celebrex.

106. Defendants' conduct in the marketing, promotion, distribution or sale of Celebrex was unfair or deceptive as Defendants:

    a.    failed to disclose increased risks of serious adverse cardiovascular events associated with the use of Celebrex to Plaintiffs, the medical community, the pharmaceutical community, the scientific community, regulators and the public;

    b.    represented to Plaintiffs, the medical community, the pharmaceutical

-16-

community, the scientific community, regulators and the public that there had been insufficient studies and testing regarding the safety and efficacy of Celebrex; and,

c.  represented to Plaintiffs, the medical community, the pharmaceutical community, the scientific community, regulators and the public that Celebrex had been fully and adequately tested, despite knowing that there had been insufficient or inadequate testing of Celebrex;

107.  Defendants' conduct in the marketing, promotion, distribution or sale of Celebrex was unfair or deceptive as Defendants knew or should have known that Celebrex was unsafe due to increased risks of serious adverse cardiovascular events associated with the use of Celebrex.

108.  Defendants' conduct in the marketing, promotion, distribution or sale of Celebrex was unfair or deceptive as Defendants knew or should have known that Celebrex had not been sufficiently tested, researched or studied as to its safety and efficacy.

109.  Defendants' conduct in the marketing, promotion, distribution or sale of Celebrex was unfair or deceptive as Defendants failed to disclose to Mr. Ardolino or his physicians that the use of Celebrex is associated with an increased risk of serious adverse cardiovascular events.

110.  As a direct and proximate result of Defendants' unfair or deceptive practices or acts in the marketing, promotion, distribution or sale of Celebrex, Mr. Ardolino suffered actual economic damages from payments and expenses associated with the purchase this unsafe product.

111.  Mr. Ardolino further seeks reasonable attorneys' and costs pursuant to Fla. Stat. § 501.2105.

## COUNT VIII
## (FRAUDULENT MISREPRESENTATION)

112. Plaintiffs reallege and incorporate by reference all those allegations contained in the preceding paragraphs of this Complaint.

113. Defendants made false statements of material facts in their marketing, promoting, distribution or selling of Celebrex.

114. Defendants' false statements of material facts included misrepresentations and active concealment of adverse information to Plaintiffs, the medical community, the pharmaceutical community, the scientific community, regulators and the public that:

    a.    there had been insufficient studies and testing regarding the safety and efficacy of Celebrex;

    b.    Celebrex had been fully and adequately tested, despite knowing that there had been insufficient or inadequate testing of Celebrex; and,

    c.    prior and continuing studies, research and testing had been conducted linking the use of Celebrex to serious adverse cardiovascular events, including that suffered by Mr. Ardolino.

115. Defendants knew that the representations in Paragraph 114 were false.

116. Defendants intended for the representations in Paragraph 114 to induce consumers and their physicians to use and prescribe Celebrex.

117. Defendants intended for the representations in Paragraph 114 to induce consumers such as Mr. Ardolino to purchase and use Celebrex.

118. Defendants intended for the representations in Paragraph 114 to induce physicians

-18-

such as Mr. Ardolino's physicians to prescribe Celebrex to their patients.

119. Reliance by Mr. Ardolino and his physicians on the representations in Paragraph 114 made by Defendants regarding Celebrex resulted in injury, pain and suffering to Mr. Ardolino.

120. As a direct and proximate result of said acts and omissions of Defendants, Mr. Ardolino has suffered and continues to suffer damages including expenses for payment of Celebrex, lost wages, benefits and entitlement, lost front pay and lost future earnings and medical expenses, past, present and future physical pain and suffering, past, present and future mental and emotional pain and suffering, distress, humiliation, loss of dignity, and loss of enjoyment of life.

121. The acts and omissions of Defendants constitute intentional misconduct or gross negligence as defined pursuant to Florida Statute § 768.72.

## COUNT IX
### (LOSS OF CONSORTIUM AS TO PLAINTIFF DOROTHY ARDOLINO)

122. Plaintiffs reallege and incorporate by reference all those allegations contained in the preceding paragraphs of this Complaint.

123. Mrs. Ardolino has suffered and continues to suffer injuries due to the tortious actions of Defendants.

124. Due to the underlying tortious actions of Defendants, Mr. Ardolino has suffered and continues to suffer injuries by which Mrs. Ardolino has experienced and will continue to experience a loss of the love, support, affection, companionship, and consortium for which she is entitled to recover.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request joint and several relief in the form of economic damages including: expenses for payment of Celebrex, lost wages, benefits, entitlement, lost front pay and future earnings and medical expenses; compensatory damages including: past, present and future physical pain and suffering, past, present and future mental and emotional pain and suffering, loss of support, companionship and consortium for the mental pain and suffering they have suffered since the time of Mr. Ardolino's injury, distress, humiliation, loss of dignity and loss of enjoyment of life; punitive damages; prejudgment interest, attorneys' fees and costs, and any other such relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

> Respectfully submitted,
>
> HENRICHSEN SIEGEL, P.L.L.C.
> 1648 Osceola Street
> Jacksonville, Florida 32204
> (904) 381-8183
> Fax: (904) 381-8190
>
> _____
> Neil L. Henrichsen
> Fla. Bar No.: 0111503
> Shands M. Wulbern
> Fla. Bar No.: 0155217
>
> Counsel for Plaintiffs